**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| Cheryl A. Moore-Hopkins, | Case No. 2:20-cv-01825-DJA |
| Plaintiff, | |
| v. | **Order** |
| Andrew Saul[1], Commissioner of Social Security, | |
| Defendant. | |

Before the Court is Plaintiff Cheryl Moore-Hopkins' motion for reversal or remand (ECF No. 22), the Commissioner's cross motion to affirm (ECF No. 23), and Plaintiff's reply (ECF No. 25). Because the Court finds that the Administrative Law Judge's ("ALJ") determinations were supported by substantial evidence, it denies Plaintiff's motion for reversal and/or remand (ECF No. 22) and grants the Commissioner's cross motion to affirm (ECF No. 23). The Court finds these matters properly resolved without a hearing. LR 78-1.

I.    **Background.**

      A.    *Procedural history.*

      On October 4, 2017, Plaintiff filed an application for supplemental social security income benefits, alleging disability date with an onset of May 2, 2011. (AR 15). The Commissioner initially denied Plaintiff's claim on April 2, 2018 and again upon reconsideration on July 20, 2018. (ECF No 22 at 2). On March 26, 2020 the ALJ issued an unfavorable decision finding Plaintiff not disabled because she could perform her past relevant work. (AR 15-32). The Appeals Council denied review, making the ALJ's decision the final agency decision. (AR 1-6).

---

[1] Kilolo Kijakazi is now the Commissioner of Social Security and substituted as a party.

In conducting his analysis, the ALJ reviewed medical opinions by Dr. Lisa Foerster—consultive examiner—and Kristy Muir, APRN—Plaintiff's treating nurse.  RN Muir concluded that Plaintiff's symptoms would frequently interfere with her attention and concentration while performing simple work-related tasks.  (AR 26).  RN Muir opined that Plaintiff would need to lie down at work more than typical breaks and that she would miss work more than four times per month.  (AR 26-27).  RN Muir also checked boxes demonstrating that Plaintiff had moderate limitations in ignoring/avoiding distractions while working and using reasoning/judgment to make work-related decisions.  (AR 27).  She checked boxes for marked limitations in understanding/responding to social cues, metacognition, following simple instructions, managing mental symptoms, maintaining hygiene, hazards awareness, setting realistic goals, and working in proximity to others without distractibility.  (AR 27).  RN Muir checked boxes that Plaintiff had extreme limitations in sequencing multi-step activities, sustaining regular work routine/attendance, completing a full workday without extra breaks, completing tasks in a timely manner, cooperating/handling conflicts with others, adapting to change, and asking for help when needed.  (AR 27).  The ALJ ultimately found RN Muir's conclusions unpersuasive.  (AR 27).

Dr. Foerster opined that Plaintiff could carry out simple one or two-step instructions with sustained concentration and that, while she could interact with supervisors and co-workers, she could not interact with the public.  (AR 27).  The ALJ found Dr. Foerster's opinion somewhat persuasive.  (AR 27).  The ALJ ultimately determined that Disability Determination Services physicians—Drs. Mark Berkowitz and Joseph Centi—offered opinions that were more persuasive.  (AR 27-29).

In finding Dr. Foerster's opinion somewhat persuasive and RN Muir's opinion not persuasive, the ALJ thoroughly analyzed evidence in the record.  This evidence included RN Muir's own treatment notes.  Although certain of these notes depicted Plaintiff as not doing well or tearful and anxious around the time she feared housing insecurity (AR 25), multiple others showed that Plaintiff was doing well (AR 23-26), loving her life (AR 22), and had an overall normal mental status (AR 22-26).  Even when Plaintiff claimed that she was not doing well, RN Muir noted that Plaintiff had an appropriate appearance, normal speech and thought processes, no

1    evidence of delusion or hallucination, and no suicidal or homicidal ideations.  (AR 23-26).  RN

2    Muir's prescribed medications fluctuated over time in dosage and type, but Plaintiff was

3    consistently on approximately four to six medications from January 2016 until December 2019.

4    (AR 22-26).

5          The ALJ also considered that, although Plaintiff claimed that her disability began in 2011,

6    when she quit her job in 2015, it was because her employer did not provide adequate supplies

7    rather than for medical related reasons.  (AR 27).  The ALJ noted that after quitting, Plaintiff

8    performed typical parenting duties, despite her alleged impairments.  (AR 27).  Plaintiff also had

9    never lost custody of her adopted son and was never hospitalized for her mental impairments.

10   (AR 27).  Plaintiff denied any difficulty interacting with past co-workers, enjoyed getting

11   massages and her nails done with friends, and had lived alone since 2017.  (AR 27-28).

12   Plaintiff's activities included shopping in stores, driving her son to school, watching television,

13   doing chores, chatting with family on the computer, preparing meals, listening to music, feeding a

14   stray cat, coloring, and visiting with a friend.  (AR 28-29).  Considering this evidence along with

15   Plaintiff's relatively normal mental status examinations and functioning during exams, the ALJ

16   found Drs. Berkowitz and Centi's conclusions of "B" criteria limitations more persuasive.  (AR

17   29).

18         ***B.      The ALJ decision.***

19         The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R.

20   §§ 404.1520, 416.920.  (AR 15-32).  At step one, the ALJ found that Plaintiff had not engaged in

21   substantial gainful activity since October 4, 2017.  (AR 17).  At step two, the ALJ found that

22   Plaintiff has severe medically determinable impairment including social anxiety disorder, panic

23   disorder, and major depressive disorder.  (AR 17).  At step three, the ALJ found that Plaintiff's

24   impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404,

25   Subpart P, Appendix 1.  (AR 18).  In making this finding, the ALJ specifically considered

26   Listings 3.00, et seq., 1.04, 12.04, and 12.06.  (AR 18-19).

27         At step four, the ALJ found Plaintiff had a residual functional capacity ("RFC") to

28   perform medium work as defined in 20 C.F.R. 416.967(c).  (AR 19).  The ALJ found that

"[d]espite mental impairment, [Plaintiff] could understand, carry out and remember work instructions and use judgment to make work-related decisions, accept supervision and interact with co-workers, and adapt to change in a routine work setting, to perform simple work tasks, in which interaction with the public would be occasional, brief, and casual in nature."  (AR 19).  At step five, the ALJ found Plaintiff capable of performing her past relevant work as a cleaner/housekeeper.  (AR 31).  Accordingly, the ALJ concluded that Plaintiff was not under a disability at any time from October 4, 2017, through the date of the decision.  (AR 32).

**II.     Standard.**

The court reviews administrative decisions in social security disability benefits cases under 42 U.S.C. § 405(g).  *See Akopyan v. Barnhard*, 296 F.3d 852, 854 (9th Cir. 2002).  Section 405(g) states, "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action…brought in the district court of the United States for the judicial district in which the plaintiff resides."  The court may enter, "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing."  *Id.*  The Ninth Circuit reviews a decision of a District Court affirming, modifying, or reversing a decision of the Commissioner *de novo*.  *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2003).

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005).  However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence.  *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).  In determining whether the Commissioner's findings are

supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).  Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record.  *Batson*, 359 F.3d at 1193.  When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation.  *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

### III.    Disability evaluation process.

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995).  To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  More specifically, the individual must provide "specific medical evidence" in support of her claim for disability.  20 C.F.R. § 404.1514.  If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy.  *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled.  *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  If at any step the ALJ determines that she can make a finding of disability or non-disability, a determination will be made, and no further evaluation is required.  *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).  Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA").  20 C.F.R. § 404.1520(b).  SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit.  *Id*. § 404.1572(a)-(b).  If the individual is engaged in SGA, then a finding of not disabled is made.  If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. *Id.* § 404.1520(c).  An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. *Id.* § 404.1521; *see also* Social Security Rulings ("SSRs") 85-28.   If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made.  If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  If the individual's impairment or combination of impairments meet or equal the criteria of a listing and the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made.  20 C.F.R. § 404.1520(h).  If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

Before moving to step four, however, the ALJ must first determine the individual's residual functional capacity ("RFC"), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p.  In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R. § 404.1529; *see also* SSR 16-3p.  To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must evaluate the individual's statements based on a consideration of the entire case record.  The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW").  20 C.F.R. § 404.1520(f).  PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last fifteen years or fifteen years before the date that disability must be established.  In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA.  20 C.F.R. §§ 404.1560(b) and 404.1565.  If the individual has the RFC to perform her past work, then a finding of not disabled is made.  If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

Step five requires the ALJ to determine whether the individual can do any other work considering her RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g).  If she can do other work, then a finding of not disabled is made.  Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner.  The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do.  *Yuckert*, 482 U.S. at 141-42

**IV.    Analysis and findings.**

New regulations apply to claims filed on or after March 27, 2017 which change the framework for how an ALJ must evaluate medical opinion evidence.  *See* SOCIAL SECURITY ADMINISTRATION, 82 FR 5844-01, REVISIONS TO RULES REGARDING THE EVALUATION OF MEDICAL EVIDENCE (2017); 20 C.F.R. §§ 404.1520c, 416.920c.  The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…" REVISIONS TO RULES, 82 FR 5844-01 at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to

1   support or contradict a medical opinion or prior administrative medical finding" (including, but

2   not limited to, "evidence showing a medical source has familiarity with the other evidence in the

3   claim or an understanding of our disability program's policies and evidentiary requirements").  20

4   C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

5        Supportability and consistency are the most important factors, and therefore the ALJ is

6   required to explain how both factors were considered.  20 C.F.R. §§ 404.1520c(b)(2),

7   416.920c(b)(2).  Supportability and consistency are explained in the regulations:

8        (1)   Supportability.  The more relevant the objective medical evidence
9              and supporting explanations presented by a medical source are to
             support his or her medical opinion(s) or prior administrative medical
10            finding(s), the more persuasive the medical opinions or prior
             administrative medical findings will be.
11
12       (2)   Consistency.  The more consistent a medical opinion(s) or prior
             administrative finding(s) is with the evidence from other medical
13            sources and nonmedical sources in the claim, the more persuasive
             the medical opinions or prior administrative finding(s) will be.
14

15  20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).  The ALJ may, but is not required

16  to, explain how the other factors were considered.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

17  However, when two or more medical opinions or prior administrative findings "about the same

18  issue are both equally well supported…and consistent with the record…but are not exactly the

19  same," the ALJ is required to explain how "the other most persuasive factors" were considered.

20  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

21       *A.     The ALJ's decision to find RN Muir's opinion unpersuasive is supported by
             substantial evidence.*
22

23       Plaintiff argues that the ALJ erred in finding RN Muir's opinions unpersuasive.  (ECF No.

24  22 at 12).  She claims that the ALJ used flawed arguments in determining RN Muir's opinions to

25  be unpersuasive, including: (1) the opined limitations were inconsistent with the opinions of

26  licensed medical doctors and psychologists; (2) the opined limitations were unsupported by

27  progress notes; and (3) Plaintiff did not leave her job in 2015 due to medical reasons.  *Id.*

28  Plaintiff argues that the first line of reasoning disregards the importance of a "treating

relationship," especially because RN Muir is the only medical source to have evaluated Plaintiff more than once.  *Id.*  She adds that RN Muir's opinion is not wholly inconsistent with Dr. Foerster's opinion that Plaintiff "had no ability to understand, remember, and carry out even detailed tasks, was limited to one-to-two step instructions, and was totally incapable of interacting with the public."  *Id.*  Plaintiff argues that RN Muir's opinion did not demonstrate benign mental status findings or a favorable response to medication because RN Muir prescribed increasing dosages and medications over time.  *See id.* at 13.  Finally, she argues that the third line of reasoning improperly considers Plaintiff's actions in 2015, two years before she applied for social security benefits.  *See id.*

The Commissioner responds that the ALJ properly considered RN Muir's opinion to be unpersuasive because they were "unsupported by her own treatment notes [and] were inconsistent with the normal objective findings in the record and plaintiff's activities."  (ECF No. 23 at 16).  The Commissioner points out that RN Muir's notes depicted numerous normal mental status examinations; improvement with treatment; that Plaintiff was calm, cooperative, and cognitively intact; that she denied mood swings, psychosis, delusions, and paranoid ideations; and that her medications were stable for most of her treatment.  *Id*. at 16-17.  These notes are inconsistent with RN Muir's extreme conclusions about Plaintiff's cognitive abilities.  *See id.*  Additionally, the Commissioner explains that RN Muir's opinion was inconsistent with other evidence, including Plaintiff's normal mental status exams; that Plaintiff did not quit her job for medical reasons; and Plaintiff's activities like caring for her son, preparing meals, watching television, doing chores, reading, going to the store, chatting with family, getting massages, and having her nails done with friends.  *See id.*  The Commissioner adds that it was appropriate for the ALJ to rely on the opinions of Dr. Mark Berkowitz and Dr. Joseph Centi—Disability Determination Services consultants—who both determined that Plaintiff only had "mild restriction in understanding, remembering or applying information, moderate limitation in interacting with others, moderate limitation in concentrating, persisting or maintaining pace and mild limitation in adapting or managing oneself." *See id.* at 13; (AR 29).

1       In reply, Plaintiff argues that the ALJ improperly made his own hierarchy of medical

2  opinions by finding that RN Muir's opinion was inconsistent with that of Dr. Berkowitz and Dr.

3  Centi and deciding to give Dr. Berkowitz and Dr. Centi's opinions greater weight.  (ECF No. 25

4  at 4-5).  Plaintiff asserts that, despite the eradication of the old regulatory scheme, the ALJ was

5  still required to explain his rationale in assessing opinion evidence.  *See id.* at 2.  Plaintiff argues

6  that instead of explaining his rationale, the ALJ provided his own evaluation of the evidence.  *See*

7  *id.* at 4.

8       The Court finds that the ALJ's evaluation of RN Muir's opinion evidence is supported by

9  substantial evidence.  The ALJ addressed both supportability and consistency, thoroughly

10  detailing the record and pointing out the portions—including in RN Muir's own notes—that were

11  either inconsistent with RN Muir's opinion or did not support her conclusions.  (AR 20-29).

12  Even though RN Muir is a treating physician, the new regulations provide that there is no specific

13  evidentiary weight that the ALJ had to give her opinion.  Rather, the ALJ was required to

14  consider her opinion along with all other opinions and then evaluate the persuasiveness of RN

15  Muir's opinion.  That is exactly what the ALJ did here.  The ALJ considered supportability and

16  consistency by comparing RN Muir's conclusions with the remainder of the record, other

17  opinions, RN Muir's own notes, and the Plaintiff's activities.  The ALJ's decision that RN Muir's

18  conclusion was inconsistent with and unsupported by these items is supported by substantial

19  evidence.  The ALJ was not required to address the other factors and was permitted to find the

20  opinions of Drs. Berkowitz and Centi persuasive using the same process as he did to determine

21  that RN Muir's conclusions were unpersuasive.

22       To Plaintiff's first argument, although RN Muir and Dr. Foerster's opinions were not

23  entirely inconsistent with each other, the ALJ thoroughly explained why those opinions were

24  inconsistent with the record.  To Plaintiff's second argument, although RN Muir's prescriptions

25  fluctuated, she stayed on a relatively consistent plan for years, and RN Muir's notes did not

26  otherwise demonstrate that Plaintiff was cognitively impaired to the point of being disabled.

27  Finally, although the ALJ considered that Plaintiff left her job in 2015 which was before she

28  applied for disability, this was after she alleged her disability began in 2011, and Plaintiff did not

1
2
3

leave because of her disabilities.  Because the ALJ's decision to find RN Muir's conclusion unpersuasive is supported by inferences reasonably drawn from the record, the Court finds that the ALJ's decision is supported by substantial evidence.

4
5

       **B.**       ***The ALJ's decision to find Dr. Foerster's opinion only somewhat persuasive is supported by substantial evidence.***

6
7
8
9
10
11
12
13
14
15

Plaintiff argues that the ALJ improperly found Dr. Foerster's conclusions to be only somewhat persuasive.  (ECF No. 22 at 6).  Plaintiff also argues that the ALJ discounted Dr. Foerster's opinion that Plaintiff could not interact with the public without providing a proper explanation.  *See id.*  Plaintiff explains that, in discussing Dr. Foerster's opinion, the ALJ used flawed arguments like: (1) Dr. Foerster's opinions were largely based on her interactions with Plaintiff rather than the record; (2) Dr. Foerster's opinions were inconsistent with the unremarkable mental status exams and routine care demonstrated by the record; (3) Dr. Foerster's opinions were inconsistent with the fact that Plaintiff had not lost custody of her child; and (4) Dr. Foerster's opinions were inconsistent with the fact that Plaintiff did not require mental hospitalizations.  *See id.* at 8.

16
17
18
19
20
21
22
23
24
25
26
27

Plaintiff asserts that the first argument is flawed because it is "unclear how Dr. Foerster's reliance on her own examination findings and interactions with Plaintiff would in any way undermine her opinion.  *See id.*  To the second argument, Plaintiff explains that there was no logical bridge between the evidence the ALJ cited and his conclusion that Dr. Foerster's opinions were not persuasive.  *See id.* at 8-9.  Plaintiff cites the ALJ's characterization of Plaintiff's medical treatment as "nothing more than routine care" as the ALJ engaging in his own interpretation of the evidence.  *See id.*  Plaintiff also argues that the ALJ's reliance on benign mental status findings as inappropriately giving a hierarchy to only one type of mental evidence.  *See id.*  To the third argument, Plaintiff points out that courts do not rely on whether a person has lost custody of their children to determine how to evaluate a consultative examiner's opinion.  *See id.* at 10.  To the fourth argument, Plaintiff explains that Plaintiff need not have been hospitalized to be disabled.  *See id.*

28

In response, the Commissioner explains that the ALJ found Dr. Foerster's opinion supported by her examination of Plaintiff, but that the entire record supported a less restrictive limitation. (ECF No. 23 at 15). The Commissioner points out that most of the evidence in the record which demonstrated a higher level of functioning was not available to Dr. Foerster. *See id.* at 15-16. In response to Plaintiff's first criticism of the ALJ's arguments, the Commissioner explains that the ALJ was required to consider whether Dr. Foerster's examination was consistent with the entire record—rather than only her own examination—to determine consistency. *See id.* In response to the second criticism, the Commissioner points out that the ALJ did create a logical bridge between the evidence and his conclusion that Dr. Foerster's opinions were not persuasive because he cited evidence of unremarkable mental signs, favorable outcomes, no loss of child custody, well controlled impairments, and no hospitalization. *See id.* Responding to the third and fourth criticisms, the Commissioner argues that the ALJ was entitled and required to rely on objective evidence—such as Plaintiff's care for her child and lack of hospitalizations—to draw his conclusions about Dr. Foerster's opinions. *See id.*

In reply, Plaintiff argues that the ALJ addressed Dr. Foerster's opinion by improperly relying on his own interpretation of the evidence. (ECF No. 25 at 4). Plaintiff argues that the Commissioner did not adequately address her four criticisms. *See id.* at 4-5. She notes that Dr. Foerster was not required to consider the entire record, that the ALJ's "discussion of the evidence was rife with mischaracterizations," and that the ALJ was attempting to require more stringent disability standards in considering the mental evaluation evidence. *See id.* at 5.

Here, the Court finds that the ALJ's decision to find Dr. Foerster's opinion somewhat persuasive to be supported by substantial evidence. The ALJ analyzed Dr. Foerster's opinion in relation to the medical records as a whole and the medical opinions of other providers, including RN Muir. The ALJ found that Dr. Foerster's conclusions that Plaintiff could only carry out simple one or two-step instructions and that Plaintiff could never interact with the public unpersuasive because the record reflected that Plaintiff demonstrated independence in her daily activities, many of which—like getting her nails done, getting massages, taking her child to school, and shopping in stores—involved interacting with the public. (AR at 27-28). The ALJ

noted that Dr. Foerster based her opinion primarily on her interactions with Plaintiff, rather than the entire record.   (AR 27-28).   The ALJ pointed out the portions of the record that demonstrated Plaintiff's abilities to perform more complicated work than Dr. Foerster suggested. (AR 27-28). Because Drs. Berkowitz and Centi's opinions that Plaintiff could perform "simple" work and was moderately limited in her ability to engage with the public were more consistent and supported by the record, the ALJ properly found their opinions more persuasive.  (AR 27-28).

The Court also does not find the ALJ's reasoning flawed. Fist, Plaintiff argues that it was improper to discount Dr. Foerster for relying primarily on her interactions with Plaintiff.  But the ALJ was required to consider consistency, not only supportability.  While Dr. Foerster's conclusions may have been supported by her interactions with Plaintiff, they were not consistent with the record, likely because Dr. Foerster did not consider the entire record.  Second, Plaintiff's argument that the ALJ created no logical bridge between the evidence and his decision to find Dr. Foerster's opinions unpersuasive is without merit.  The ALJ outlined the evidence that cut against Dr. Foerster's conclusions and explained why Dr. Foerster's conclusion did not square with the evidence.  This is a sufficient logical bridge to show why Dr. Foerster's opinion was less persuasive.  While Plaintiff asserts that the ALJ mischaracterized the evidence, the Court does not agree.  While the ALJ did assert that Plaintiff's medical care was routine without much support, the Court finds this error harmless.  Plaintiff's records show that her prescriptions from RN Muir fluctuated, but she frequently appeared at sessions with RN Muir without disabling symptoms of depression and anxiety.  And while Plaintiff cycled on and off certain medications, others remained constant.  The ALJ also did not rely exclusively on Plaintiff's normal mental status findings in determining that Dr. Foerster's opinion was only somewhat persuasive.  Rather, contrary to Plaintiff's third and fourth arguments, the ALJ compared Dr. Foerster's opinion with the record, including the fact that Plaintiff did not lose custody of her child, had not been hospitalized for depression or anxiety, showed a favorable response to routine care, and had well controlled mental impairments.  Under the substantial evidence test, the Court upholds the ALJ's findings because they are supported by inferences reasonably drawn from the record.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IT IS THEREFORE ORDERED** that Plaintiff's motion for reversal or remand (ECF No. 22) is **denied**.

**IT IS FURTHER ORDERED** that Defendants cross motion to affirm (ECF No. 23) is **granted**.  The Clerk of Court is kindly directed to enter judgment accordingly and close this case.

DATED: October 20, 2021

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE